# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re Petition of | ) | |
| | ) | |
| OASIS FOCUS FUND LP, | ) | MISC. No. 21 |
| | ) | |
| Petitioner, for an Order Pursuant to 28 | ) | |
| U.S.C. § 1782 to Conduct Discovery for | ) | |
| Use in a Foreign Proceeding. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PETITION OF OASIS FOCUS FUND LP FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 USC § 1782

REID COLLINS & TSAI LLP
Jonathan M. Kass (DE ID 6003)
300 Delaware Avenue, Suite 770
Wilmington, DE 19801-6600
(302) 467-1765
jkass@reidcollins.com

REID COLLINS & TSAI LLP
William T. Reid, IV (*pro hac vice* to be submitted)
1301 S. Capital of Texas Hwy
Suite C300
Austin, TX 78746
(512) 647-6100
wreid@reidcollins.com

REID COLLINS & TSAI LLP
Rachel S. Fleishman (*pro hac vice* to be submitted)
Minyao Wang (*pro hac vice* to be submitted)
330 West 58th Street
Suite 403
New York, NY 10019
(212) 344-5200
rfleishman@reidcollins.com
mwang@reidcollins.com

Date: January 20, 2022

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT ............................................................................................................................ 6

    I.    The Petition Satisfies the Statutory Requirements of Section 1782. .......................... 6

        A.    Respondents Are Found in the District of Delaware. ...................................... 6

        B.    Petitioner Seeks Discovery for Use in a Foreign Proceeding. ........................... 7

        C.    Petitioner Is an Interested Person. ..................................................................... 8

    II.    The Discretionary Factors Favor Granting the Petition. ........................................... 8

        A.    Respondents Are Not Participants in the Appraisal Proceeding. ..................... 8

        B.    The Cayman Court Is Receptive to U.S. Judicial Assistance. ........................... 9

        C.    The Petition Is Not an Attempt to Circumvent Cayman Law. ........................ 11

        D.    The Discovery Sought Is Not Unduly Burdensome. ....................................... 11

            1.    The Requested Discovery Is Appropriate Given Respondents' Extensive Roles in the Underlying Events. ............................................................. 12

            2.    Rule 30(b)(6) Depositions Are Not Burdensome. ................................... 13

            3.    MS Has Legal Control of Documents in the Possession of MS Asia. .... 14

            4.    Section 1782 Reaches Documents Located Outside the United States... 16

        E.    The Context of the Appraisal Proceeding Supports Approval of the Petition. . 17

CONCLUSION ....................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Afros S.P.A. v. Krauss–Maffei Corp.*,
113 F.R.D. 127 (D.Del.1986) ................................................................. 15

*De Leon v. Clorox Co.*,
2021 WL 718840 (N.D. Cal. Feb. 24, 2021) .......................................... 18

*EI duPont de Nemours & Co. v. Phillips Petroleum Co.*,
621 F. Supp. 310 (D. Del. 1985) ............................................................ 15

*Illumina Cambridge Ltd v. Complete Genomics, Inc.*,
2020 WL 1694353 (N.D. Cal. Apr. 7, 2020) .......................................... 15

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ........................................... 17

*In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct
Discovery for Use in a Foreign Proceeding by Athos Asia Event Driver Master Fund*,
2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) ........................................... 7

*In re ATM Fee Antitrust Litig.*,
233 F.R.D. 542 (N.D. Cal. 2005) ........................................................... 16

*In re Bayer AG*,
146 F. 3d 188 (3d Cir. 1998) .......................................................... 6, 11

*In re Biomet Orthopaedics Switzerland GmBh*,
742 F. App'x. 690 (3d Cir. 2018) ........................................................ 8, 9

*In re Chevron Corp.*,
633 F.3d 153 (3d Cir. 2011) ................................................................... 8

*In re De Leon*,
No. 20-3406, 2020 WL 3969865 (6th Cir. May 26, 2020) ..................... 17

*In re del Valle Ruiz*,
939 F. 3d 520 (2d Cir. 2019) .......................................................... 16, 17

*In re Ex Parte Application of Eni S.p.A.*,
2021 WL 1063390 (D. Del. Mar. 19, 2021) .............................................. 7

*In re Ex Parte Application of Porsche Automobil Holding SE*,
2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ............................................ 13

*In re Fuhr*,
2014 WL 11460502 (S.D.N.Y. Aug. 4, 2014) ......................................... 17

*In re Liverpool Ltd. P'ship*,
2021 WL 3793901 (D. Del. Aug. 26, 2021) ................................. 6, 8, 14, 17

*In re Penner*,
  2017 WL 5632658 (D. Mass. Nov. 22, 2017) ............................................................... 9

*In re Platinum Partners Value Arbitrage Fund L.P.*,
  583 B.R. 803 (Bankr. S.D.N.Y. 2018) ....................................................................... 9

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) .......................................................................................... passim

*Inventus Power v. Shenzhen Ace Battery*,
  2021 WL 4477940 (N.D. Ill. Sept. 30, 2021) ............................................................ 14

*INVISTA N. Am. S.A.R.I. v. M & G USA Corp.*,
  2013 WL 2456252 (D. Del. June 5, 2013) ................................................................. 11

*INVISTA N. Am. S.A.R.L. v. M & G USA Corp.*,
  2013 WL 1867345 (D. Del. Mar. 28, 2013) ............................................................... 11

*Jacobs v. Floorco Enter., LLC*,
  2020 WL 1290607 (W.D. Ky. Mar. 18, 2020) ........................................................... 14

*Matter of De Leon*,
  2020 WL 1180729 (S.D. Ohio Mar. 12, 2020) .......................................................... 17

*Matter of Degens*,
  2020 WL 4252725 (S.D.N.Y. July 24, 2020) ............................................................. 17

*Matter of HES (Caribbean) International Holdings, S.R.L.*,
  2020 WL 728892 (D.N.J. Feb. 13, 2020) ..................................................................... 9

*Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*,
  206 F.R.D. 392 (D. Del. 2002) ................................................................................... 15

*Pennwalt Corp. v. Plough Inc.*,
  85 F.R.D. 257 (D. Del. 1979) ..................................................................................... 15

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  233 F.R.D. 143 (D. Del. 2005) ................................................................................... 15

*Sergeeva v. Tripleton Int'l Ltd.*,
  834 F.3d 1194 (11th Cir. 2016) ................................................................................. 16

*Silver v. Tenet Health Care Corp.*,
  2010 WL 11444064 (S.D. Fla. Aug. 6, 2010) ............................................................ 16

*United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*,
  870 F.2d 1450 (9th Cir. 1989) ................................................................................... 16

**Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................................................ 11

Fed. R. Civ. P. 34 ......................................................................................................... 15

Petitioner Oasis Focus Fund LP, a Delaware limited partnership, hereby respectfully petitions this Court for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") authorizing Petitioner to take documentary discovery and Rule 30(b)(6) deposition testimony from Morgan Stanley ("MS") and Morgan Stanley & Co. LLC ("MSC," and together with MS, "Morgan Stanley" or "Respondents") for use in an appraisal proceeding (the "Appraisal Proceeding") pending in the Cayman Islands in which the Financial Services Division of the Grand Court of the Cayman Islands (the "Cayman Court") will determine the fair value of Petitioner's shares in Sina Corporation ("Sina" or the "Company"). Sina is a Chinese company, incorporated in the Cayman Islands, that was recently taken private in a merger transaction (the "Merger") for a share price that Petitioner contends was woefully inadequate. Petitioner has dissented under Cayman law and is pursuing the Appraisal Proceeding to recover the full value of its Sina shares.

This Petition is supported by the Declaration of Samuel Martin Dawson, a Cayman Islands attorney, (the "Dawson Decl."), and the Declaration of Minyao Wang (the "Wang Decl.").

## PRELIMINARY STATEMENT

Petitioner has brought this Petition to obtain discovery pursuant to Section 1782 for use in the Appraisal Proceeding. Respondent MS owns and controls Morgan Stanley Asia Limited ("MS Asia"), the financial advisor to the special committee (the "Special Committee") of Sina's board of directors that negotiated the Merger. Respondent MSC was the lead underwriter for the initial public offering of TuSimple Holdings, Inc. ("TuSimple"), a California-based company in which Sina held a large and valuable stake. The discovery Petitioner seeks from Respondents is directly relevant to the central issue the Cayman Court must decide in the Appraisal Proceeding: the fair value of Petitioner's (and the other dissenting shareholders') Sina shares. Because the Cayman Court does not have jurisdiction over MS or MSC, it cannot order discovery from those entities.

1

However, the Cayman Court will permit litigants to use evidence obtained through U.S. courts by means of Section 1782. Accordingly, Petitioner brings this Petition to obtain discovery from MS and MSC, both of which are subject to the jurisdiction of this Court, to assist the Cayman Court in determining the fair value of Petitioner's Sina shares.

The Petition satisfies the statutory requirements of Section 1782: (i) MS and MSC are found in this District because each is incorporated in Delaware; (ii) the requested discovery is "for use" in a foreign proceeding; and (iii) Petitioner is an "interested person." 28 U.S.C. § 1782(a) (2018). As such, whether to grant the Petition is a decision left to the discretion of this Court. In *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004), the Supreme Court identified four non-exclusive factors that a district court may consider in deciding whether to grant discovery under Section 1782. *Id* at 264. Each of those factors weighs in favor of granting the Petition.

*First*, Respondents are neither parties to the Appraisal Proceeding nor subject to the jurisdiction of the Cayman Court. As a result, Petitioner cannot as a practical matter use the Cayman legal process to compel discovery from Respondents.

*Second*, the Cayman Court will be receptive to the assistance afforded by American courts through Section 1782. The Cayman Court has emphasized that judges need access to *all* available information concerning valuation to determine the fair value of shares in an appraisal proceeding, including evidence from outside the Cayman Islands. For instance, in a case involving a going-private merger similar to the Merger, the Cayman Court commented that the more than 2,900 documents produced by the financial advisor were "obviously relevant."

*Third*, the Petition is not an attempt to circumvent any restrictions imposed by Cayman law on proof gathering. Far to the contrary, the scope of discovery is broad under Cayman law and Cayman courts welcome the introduction of foreign evidence through Section 1782.

*Fourth*, the discovery Petitioner is seeking is not unduly burdensome. It is tailored to obtain information directly relevant to the critical issues in the Appraisal Proceeding, such as the fair value of Petitioner's Sina shares, the methods Sina used to value its assets to arrive at the Merger consideration, and the approval process for the Merger.

In sum, MS and MSC have information in their possession, custody, or control that is directly relevant to the central issue in the Appraisal Proceeding. The Petition satisfies the statutory requirements of Section 1782 and the *Intel* factors, is fully consistent with the policies behind Section 1782, and should be granted.

## STATEMENT OF FACTS

### A.    Sina and Mr. Chao

Sina is a technology company incorporated in the Cayman Islands with its headquarters in Beijing, China. In April 2000, the Company completed its initial public offering and was listed on the Nasdaq market. Sina's shares were traded in the United States until the Merger closed.

In November 2017, after narrowly prevailing on a proxy fight against an American activist investor, the Company issued 7,150 newly created preference shares with 10,000 votes per share to a company controlled by Sina's Chairman and Chief Executive Officer, Mr. Charles Guowei Chao. Mr. Chao paid the nominal consideration of $7,150 for these shares. As a result, Mr. Chao's voting power in the Company increased from 11.1% to 55.5%. *See* Wang Decl. Ex. C.

### B.    Respondents' Roles in the Merger and TuSimple's IPO

On July 6, 2020, Sina announced it had received a proposal from an entity controlled by Mr. Chao to take the Company private for US$41.00 per share (the "July 6 Proposal"). *Id.* Ex. E at 1, 25. By then, Mr. Chao's share of the voting power of the Company had grown to 61.1%. *Id.* at 3-4. The Special Committee retained MS Asia, which is incorporated in Hong Kong, China, and

3

is a wholly owned subsidiary of MS, as its financial advisor to "assist the Special Committee in evaluating and negotiating the Proposed Transaction or any alternative transaction." *Id.* at 26. From public filings, Petitioner has learned that MS Asia "explained to the Special Committee the general market practice of a pre-signing market check and/or post-signing go-shop in similar going private transactions involving Cayman-domiciled companies where a buyer group owns more than 50% of the aggregate voting power." *Id.* at 27. Yet, despite receiving this advice, the Special Committee failed to conduct any kind of genuine market check.

In addition, Mr. Chao rejected the Special Committee's request for a "majority of the minority" provision to the Merger agreement. *Id.* at 29-30. Had such a provision been included, the Merger could only have been consummated if a majority of the shares not controlled by Mr. Chao had voted in favor of the Merger. But the provision was not included--and ultimately a majority of the minority did *not* vote in favor of the Merger. Thus, Mr. Chao was able to force approval of the Merger by virtue of the super-voting preference shares issued to him in 2017.

MS Asia worked extensively with the Special Committee and Mr. Chao to negotiate the transaction, including the share purchase price, which increased incrementally from US$41.00 in the July 6 Proposal to US$43.30. *Id.* at 30. MS Asia met with the Special Committee and other players by phone. *See id.* at 28, 29. At a Special Committee meeting on September 28, 2021, MS Asia delivered its 40-page financial analysis (the "MS Presentation") of the Merger to the Special Committee along with an oral opinion affirming the fairness, from a financial point of view to holders of the Company's shares, of the proposed US$43.30 Merger price. *Id.* at 32. Later that day, MS Asia delivered a written fairness opinion (the "Fairness Opinion") to the Special Committee. *Id.* at 47-48. Thereafter, Sina entered into a definitive Merger agreement to be taken private by Mr. Chao for a price of US$43.30 per share. *Id.* at 1.

On November 20, 2020, the Company filed an amended Proxy statement for the Merger. In its Proxy statement, the Company recommended that shareholders support the Merger. *Id*. Ex. E at 3. Importantly, the Proxy statement touted the Fairness Opinion, *id*., at 47-48 and included the entire Fairness Opinion as an exhibit, *id*., at 215-217. Sina's Schedule 13E-3, filed on October 13, 2020, included the MS Presentation in its entirety. *Id*. Ex. D at 580-635. Thus, Sina disclosed to the public the valuation analysis MS Asia conducted to conclude US$43.30 per share was fair.

Petitioner contends in the Appraisal Proceeding that US$43.30 per share was a grossly unfair price that drastically understated the true value of the Company. Dawson Decl. ¶15. Petitioner submits that the MS Presentation supporting that price was materially flawed in a broad multitude of ways, one of which is particularly relevant to the Petition. As of the extraordinary shareholders meeting held in December 2020 to approve the Merger, Sina held (through an affiliate, Sun Dream, Inc.) approximately 55.21 million shares of TuSimple, a self-driving truck company based in California. Wang Decl., Ex. M at 65, 134. Reflecting the importance of Sina's stake in TuSimple, both Mr. Chao and Sina's then-CFO sat on TuSimple's board. *Id*. Ex. L at 143-144. However, at the same time the Merger was being negotiated and finalized with the critical involvement of MS Asia, TuSimple was in the final stages of preparing for its initial public offering on the Nasdaq and MSC was serving as TuSimple's lead underwriter. *Id*. at 182 (identifying underwriters). On April 14, 2021, less than one month after the Merger closed, TuSimple sold approximately 27 million shares for US$40 per share during its initial public offering. *Id*. at 1. At US$40 per share, Sina's 55.21 million shares of TuSimple equated to US$2.2 billion which was equivalent to US$36.80 per Sina share. In connection with the Merger, however, as reflected in the MS Presentation, TuSimple was valued far lower. Specifically, MS Asia valued Sina's stake in TuSimple between US$186 million to US$288 million (using book value and a 30 percent

discount to the valuation used for a 2019 private placement). Ex. D at 615 and 623. This equated to only US$3.94 per Sina share.

### C.    The Appraisal Proceeding

Petitioner (and the other dissenting shareholders) and the Company will each retain a valuation expert to assist the Cayman Court in arriving at a fair valuation of Sina shares. Dawson Decl. ¶16. Although Cayman law permits litigants to obtain discovery from third parties located in the Cayman Islands, Cayman courts do not have the power to compel discovery from third parties not subject to the jurisdiction of the Cayman Islands, such as MS, MS Asia, and MSC. *Id.* ¶¶25-27.

Accordingly, Petitioner seeks leave of this Court to serve subpoenas on MS and MSC for documents and Rule 30(b)(6) deposition testimony related to the Merger and the IPO of TuSimple for use in the Appraisal Proceeding.

### <u>ARGUMENT</u>

### I.    The Petition Satisfies the Statutory Requirements of Section 1782.

A petitioner under Section 1782 must make three threshold showings: (i) the respondent "resides" or is "found" in the judicial district where the petition is brought; (ii) the requested discovery is "for use in a proceeding in a foreign or international tribunal;" and (iii) the petitioner is an "interested person." 28 U.S.C. § 1782(a). The Petition satisfies all three of these "modest prima facie elements." *In re Bayer AG*, 146 F. 3d 188, 195 (3d Cir. 1998).

### A.    <u>Respondents Are Found in the District of Delaware.</u>

MS and MSC are each Delaware corporate entities. (Wang Decl. Ex. F and Ex. G). A business entity is "found" in the judicial district where it is incorporated or headquartered. *In re Liverpool Ltd. P'ship*, 2021 WL 3793901, at *1 (D. Del. Aug. 26, 2021) (a Delaware corporation

is found in Delaware, which satisfies the first prong of Section 1782). Accordingly, MS and MSC are each found in Delaware and the first statutory requirement of Section 1782 is satisfied.

### B.      Petitioner Seeks Discovery for Use in a Foreign Proceeding.

Petitioner will use the requested discovery in the Appraisal Proceeding to establish the fair value of its Sina shares. Courts in the United States have held that appraisal actions in the Cayman Islands satisfy the statutory requirement for a "foreign proceeding." *See, e.g.*, *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding by Athos Asia Event Driver Master Fund*, 2021 WL 1611673, at *2 (E.D. Mo. Apr. 26, 2021) (dissenting shareholders in a Cayman appraisal case "clearly seek discovery of materials 'for use' in a foreign proceeding"); *see also* Wang Decl. Ex. K (attaching an order from the Southern District of New York approving a Section 1782 application against Duff & Phelps which served as financial advisor to a special committee that approved the go-private transaction of a Cayman company).

Furthermore, to satisfy the statutory "for use" requirement, a petitioner is not required to demonstrate that the discovery sought will be admissible or even relevant in the foreign proceeding. Rather, a petitioner must simply show that the discovery being sought under Section 1782 "will be employed with some advantage or some use in the proceeding." *In re Ex Parte Application of Eni S.p.A.*, 2021 WL 1063390, at *3 (D. Del. Mar. 19, 2021) (internal citation omitted). Petitioner will provide the documents and deposition testimony to its expert and may, subject to the Cayman Court's approval, present some of the discovery directly to the Cayman Court as evidence at trial. *See* Dawson Decl. ¶24. This satisfies the second statutory requirement.

## C.    Petitioner Is an Interested Person.

A dissenting shareholder who is a party to a Cayman appraisal action is an "interested person." *Athos Asia Event Driver Master Fund*, 2021 WL 1611673, at *3 ("Petitioners are interested parties in the foreign tribunal because each is a dissenting shareholder and a party to the Cayman Islands Appraisal Proceeding."). This final statutory requirement is also satisfied.

## II.    The Discretionary Factors Favor Granting the Petition.

Once Section 1782's statutory requirements are met, this Court should consider whether in the exercise of its discretion the Petition should be granted. *Intel,* 542 U.S. at 264. The Supreme Court has set forth four non-exhaustive factors for courts to consider: (1) whether the respondent is a participant in the foreign proceeding; (2) the nature and character of the foreign tribunal and the receptivity of the foreign tribunal to U.S. judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *In re Biomet Orthopaedics Switzerland GmBh,* 742 F. App'x. 690, 696 (3d Cir. 2018) (applying the *Intel* factors). All four *Intel* factors strongly favor granting the Petition.

## A.    Respondents Are Not Participants in the Appraisal Proceeding.

The Supreme Court has explained that when a respondent is not a party to the foreign proceeding, "[its] evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. That is precisely the situation here: neither MS nor MSC is a party to the Appraisal Proceeding. Moreover, Respondents are beyond the jurisdictional reach of the Cayman courts. Dawson Decl. ¶¶25-27. Therefore, absent recourse to discovery via Section 1782, Petitioner has no practicable way to obtain the highly relevant evidence in Respondents' possession, custody, or control. *Id.* ¶27. As such, the first *Intel* factor strongly supports granting the Petition. *In re Chevron Corp.*, 633 F.3d 153, 162 (3d Cir. 2011) ("The first *Intel* factor favors

allowing Chevron to obtain the discovery it seeks because UBR is not a participant in the Lago

Agrio litigation and, so far as we can determine from the record before us, is not subject to the

jurisdiction of the Lago Agrio Court."); *Liverpool*, 2021 WL 3793901 at *2 ("neither BAC nor

BofA Securities is a participant in the Japanese action and therefore the first *Intel* factor favors

compelling the discovery sought by Liverpool.").

**B.       The Cayman Court Is Receptive to U.S. Judicial Assistance.**

Under the second *Intel* factor, courts may "take into account the nature of the foreign tribunal,

the character of the proceedings underway abroad, and the receptivity of the foreign government

or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.

Here, the fact that Cayman courts are receptive to using evidence obtained through U.S. discovery

procedures weighs heavily in favor of granting the Petition. *See* Dawson Decl., ¶¶10-11, 23.

Indeed, the Cayman Islands Court of Appeal ("CICA") expressly held in *Lyxor Asset Management

S.A. v. Phoenix Meridian Equity Limited*, that the right to obtain full discovery via Section 1782

"is a right conferred by U.S. law-it is *not a right* conferred by, or *to be withheld under Cayman

law*." *Id.* ¶¶12-13 (citing *Lyxor* and emphasis added). CICA decisions are binding. *Id.*

Multiple U.S. courts have recognized that "Cayman courts are in fact receptive to

evidence obtained through U.S. discovery procedures, even if such evidence may not be

discoverable under Cayman law." *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R.

803, 816 (Bankr. S.D.N.Y. 2018) (citing *Lyxor*); *In re Penner*, 2017 WL 5632658, at *3 (D.

Mass. Nov. 22, 2017) (Cayman court "is open to receiving § 1782 discovery"). [1]

---

[1] There is a strong presumption that the foreign tribunal will be receptive to evidence obtained
under Section 1782 unless the respondent makes a showing to the contrary. *Biomet*, 742 F. App'x.
at 697-98, n.9 ("Under any standard, however, [respondent] has presented no evidence of" non-
receptivity); *see also Matter of HES (Caribbean) International Holdings, S.R.L.*, 2020 WL 728892,

Cayman courts have a particularly strong basis for receiving foreign discovery in appraisal proceedings because Cayman courts expressly disclaim any expertise in valuation and rely heavily upon the evidence and testimony presented by the parties' valuation experts. Dawson Decl. ¶17. As an CICA opinion explained, the "sole task of the Court is to determine the fair value of the dissenters' shares. To do that, *it needs all information*." *Id*. (citing opinion and emphasis added). As such, any evidence that has a bearing on fair value, including evidence from outside of the Cayman Islands and in the possession of a company's financial advisor, may be considered by Cayman courts. *Id*. ¶18 (citing Cayman court opinion).

Indeed, the Cayman Court commented on discovery gathered from a U.S.-based financial advisor pursuant to Section 1782 in an appraisal proceeding that bears important similarities to this case. In *In the Matter of Nord Anglia Education, Inc.*, FSD 235 OF 2017, the financial advisor, Houlihan Lokey, assisted the special committee of the company's board of directors in negotiating a merger with the company's insiders and gave a fairness opinion on the merger. The dissenting shareholders thereafter obtained discovery from Houlihan Lokey via Section 1782 for use in their Cayman appraisal proceeding. The Cayman court expressly referred to the 2,900 documents that Houlihan Lokey produced as being "obviously relevant to advancing a reasoned critique of Houlihan Lokey's [discounted cash flow] analysis." Dawson Decl. ¶¶19-20.

Likewise, in discovery scheduling orders in recent appraisal cases, including the pending order in this case, the Cayman Court contemplated the possibility that dissenting shareholders would seek discovery in the United States via Section 1782. *Id*. ¶ ¶21-22.

Thus, the second *Intel* factor weighs heavily in favor of granting the Petition.

---

at *3 (D.N.J. Feb. 13, 2020) ("[p]arties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would reject the evidence.").

### C.     The Petition Is Not an Attempt to Circumvent Cayman Law.

The third *Intel* factor asks "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *See Intel*, 542 U.S. at 244-45. This District looks to "whether a foreign court has denied the moving party access to the documents at issue." *INVISTA N. Am. S.A.R.L. v. M & G USA Corp.*, 2013 WL 1867345, at *4 (D. Del. Mar. 28, 2013), *report and recommendation adopted sub nom. Invista N. Am. S.A.R.I. v. M&G USA Corp.*, 2013 WL 2456252 (D. Del. June 5, 2013). Obviously, the Cayman Court has not denied a request for the discovery sought by this Petition; as noted previously, Petitioner cannot as a practical matter seek this discovery from the Cayman Court because, unlike this Court, it lacks jurisdiction over Respondents. [2] Thus, an order from this Court granting the Petition would not be interpreted by the Cayman Court as a circumvention of Cayman procedures. Dawson Decl. ¶11.

### D.     The Discovery Sought Is Not Unduly Burdensome.

Under the fourth *Intel* factor, a court may consider whether the discovery requests are "unduly intrusive or burdensome" and should be "rejected or trimmed." *Intel*, 542 U.S. at 265. The standard used to evaluate burdensomeness is the same standard that applies to any federal civil litigation. *In re Bayer AG*, 146 F.3d at 195 (applying the standard). Under this standard, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The discovery Petitioner seeks fully complies with this standard.

---

[2] There is no requirement under Section 1782 that a petitioner must first apply to the foreign court for discovery. *Bayer*, 146 F. 3d at 196 ("a 'quasi-exhaustion requirement' of the kind advocated by BetaChem on appeal has been rejected by those courts that have addressed it.").

1.   **The Requested Discovery Is Appropriate Given Respondents' Extensive Roles in the Underlying Events.**

Respondents played a central role in the valuation and process issues that are at the heart of the Appraisal Proceeding. MS Asia, which is wholly owned and controlled by MS, acted as the financial advisor to the Special Committee that negotiated and approved the Merger. MS Asia not only performed the valuation analysis that supposedly justified the paltry Merger consideration, but it also prepared the MS Presentation and issued the formal Fairness Opinion. At the time that MS Asia was providing the Special Committee with a lowball valuation analysis to justify the Merger, MSC was also acting as lead underwriter for TuSimple's IPO. Thus, unbeknownst to Petitioner, while MS Asia was lowballing the value of Sina's stake in TuSimple, MSC was participating in an IPO, just one month after the closing of the Merger, which valued TuSimple at an amount that was *multiples* of MS Asia's lowball valuation. Indeed, Tusimple's draft registration statement (Wang Decl, Ex. M), which ran into the hundreds of pages, and which recorded MSC's involvement, was confidentially filed on December 23, 2020, the same day as the Sina shareholder meeting to approve the Merger.

Given these facts, it is obvious that Respondents have evidence that may assist the Cayman Court in evaluating the Merger and determining the fair value of Petitioner's shares in Sina. Indeed, Sina expressly touted MS Asia's Fairness Opinion and MS Presentation in its SEC filings as support for its assertion that the Merger price was fair. As such, Sina is already on record telling its public shareholders that MS Asia's work is relevant and important to the proper valuation of Sina's shares. It is therefore reasonable and necessary for Petitioner to obtain discovery into the valuation work MS Asia performed and the dramatically divergent conclusions reached by MS Asia and MSC concerning the value of TuSimple stock.

Similarly, Petitioner is entitled to obtain communications among MS Asia, the Special Committee, and Mr. Chao relating to the approval process for the Merger. For instance, the Company acknowledged that a "go-shop" period is a standard feature of a going private transaction, yet the Merger was concluded without this important procedural safeguard. Petitioner should be allowed to obtain discovery into why this market check was rejected. In addition, because the Special Committee sought to obtain a "majority of the minority" approval provision that was not ultimately included in the Merger agreement, Petitioner should be permitted to discover why the provision was not adopted and what advice MS Asia gave the Special Committee about approving the Merger without the provision.

Accordingly, Petitioner seeks documents concerning (i) the Fairness Opinion and the MS Presentation, (ii) Morgan Stanley's communications with the Special Committee and with Mr. Chao, (iii) Morgan Stanley's attendance at Special Committee meetings, (iv) the valuation of Sina as a whole and the valuation of various assets of the Company, (v) forecasts of the Company's future performance, including financial projections and cash flow projections, (vi) any alternative transactions for the Company, (vii) any consideration of a "go shop" period for the Merger proposal, (viii) any consideration of inclusion of a provision in the Merger Agreement requiring approval by a majority of the minority shareholders of Sina for the Merger to be effective, (ix) the IPO for TuSimple, including the timing of the IPO, and (x) Morgan Stanley's conflict of interest policy in accepting client engagements.

### 2.   Rule 30(b)(6) Depositions Are Not Burdensome.

Petitioner also seeks to conduct a Rule 30(b)(6) deposition concerning the same topics. Given the demonstrated relevance of these topics to the Appraisal Proceeding, it is not unduly burdensome to ask these well-compensated financial advisors—who knew the Company would ask public shareholders to rely upon their analyses and conclusions—to provide deposition

testimony. Depositions are liberally permitted in the context of Section 1782 discovery. *In re Ex Parte Application of Porsche Automobil Holding SE*, 2016 WL 702327, at *13 (S.D.N.Y. Feb. 18, 2016) (it was "relatively evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance [respondents] would have to produce documents and prepare witnesses on a short timetable"). [3]

Moreover, Petitioner can take the depositions via Zoom (or other appropriate online platforms) to minimize the time and burden associated with them. MS and MSC are headquartered in New York City. MS's wholly owned subsidiary, MS Asia, is located in Hong Kong, where taking U.S.-style depositions, including by means of a remote platform, is permitted. *See Inventus Power v. Shenzhen Ace Battery*, 2021 WL 4477940, at *14-15 (N.D. Ill. Sept. 30, 2021) (compelling mainland Chinese witnesses to appear for remote depositions in Hong Kong or Macau); *Jacobs v. Floorco Enter., LLC*, 2020 WL 1290607, at *16 (W.D. Ky. Mar. 18, 2020) (parties "agreed to take [a mainland Chinese witness's] deposition remotely from Hong Kong"). [4] As such, Rule 30(b)(6) depositions of MSC and MS are permissible and not unduly burdensome.

### 3. **MS Has Legal Control of Documents in the Possession of MS Asia.**

It is appropriate, and not unduly burdensome, for Petitioner to seek production of MS Asia's documents and information from MS because MS has legal control of documents in the possession of MS Asia. MS Asia is a wholly owned subsidiary of MS. Wang Decl., Ex. H at 7 (MS's Schedule 13G filing dated July 31, 2021, stating that MS Asia is a wholly owned subsidiary

---

[3] Moreover, Cayman courts have the discretion to admit U.S. deposition transcripts. Dawson Decl. ¶15 (discussing *Lyxor*).
[4] The circumstances here are therefore quite different than those in *Liverpool*, where the combination of a Japanese prohibition on in-country depositions plus COVID-19 travel restrictions made an in-person 30(b)(6) deposition in the United States too burdensome on the respondent. *See* 2021 WL 3793901, at *3.

of MS); Ex. I at 178 (Morgan Stanley Investment Funds prospectus dated September 2021 stating that MS Asia is a wholly owned subsidiary of MS). By itself, this fact is dispositive on the issue of control. *See Liverpool*, 2021 WL 3793901, at *1 (holding that Bank of America Corporation, incorporated in Delaware, has control of and was required to produce documents that resided with its Japanese subsidiary) (citing *EI duPont de Nemours & Co. v. Phillips Petroleum Co.*, 621 F. Supp. 310, 312 n. 3 (D. Del. 1985) ("[a] parent corporation must produce documents, pursuant to a Fed. R. Civ. P. 34 request, of a wholly-owned subsidiary even though the subsidiary is not a party to the action.")); *see also Illumina Cambridge Ltd v. Complete Genomics, Inc.,* 2020 WL 1694353, at *5 (N.D. Cal. Apr. 7, 2020) ("Thus, respondents are obligated to produce any responsive documents that they controlled by virtue of their parent-subsidiary relationship with [China-based] MGI Tech prior to October 2019.").

Indeed, it has been the rule in the District of Delaware for at least four decades that parent corporations must produce documents held by their subsidiaries. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005) ("[P]arent corporations have been required to produce documents held by their subsidiaries"); *Novartis Pharm. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 395 (D. Del. 2002) (veil piercing analysis required only "in cases in which the corporate entities are not parent and subsidiary"); *Afros S.P.A. v. Krauss–Maffei Corp.*, 113 F.R.D. 127 (D.Del.1986) (noting that "[t]he District Court ordered discovery on the ground that the parent corporation had complete control of the subsidiary and '[t]he fact that we are dealing with separate corporate entities here is irrelevant.'"); *Pennwalt Corp. v. Plough Inc.*, 85 F.R.D. 257, 263 (D. Del. 1979) ("Production by a corporate litigant may be compelled where requested documents are in the possession and control of a separate corporate entity. This occurs

most often when a parent corporation is requested to produce documents of a wholly owned subsidiary").[5] Therefore, MS has legal control of the documents of MS Asia.[6]

### 4.   Section 1782 Reaches Documents Located Outside the United States.

Finally, the text of Section 1782 does not have a geographical restriction and the Federal Rules of Civil Procedure, which Section 1782 incorporates by reference, authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control. Accordingly, two federal circuits have expressly held that Section 1782 applies to documents located abroad. *See In re del Valle Ruiz*, 939 F. 3d 520, 533 (2d Cir. 2019) (Section 1782 "authorize[s] extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control"); *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) ("At bottom, we agree with the District Court that the location of responsive documents and electronically stored information — to the extent a physical location can be discerned in this digital age — does not establish a per se bar to discovery under § 1782.").

---

[5] Courts across the country follow the same rule. *See, e.g., United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("[a] corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls"); *Silver v. Tenet Health Care Corp.*, 2010 WL 11444064 at *3 (S.D. Fla. Aug. 6, 2010) ("Where the relationship between the entities is that of a parent and its wholly-owned subsidiary in possession of the discovery, 'control' under Rule 34 is presumed by virtue of the corporate structure, and no further analysis is required."); *In re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544 (N.D. Cal. 2005) ("[F]or purposes of compliance with Rule 34, a parent company has control of documents in the custody and possession of its wholly owned subsidiary.").

[6] In addition, MS's status as a "bank holding company" under the federal Bank Holding Company Act provides another independent reason why MS must produce responsive documents in the possession of MS Asia. *See* Wang Decl. Ex. J at 5. At least one court has relied on the Bank Holding Company Act to order a bank holding company to produce documents in the possession of its subsidiary. *ATM Fee Antitrust Litigation*, 233 F.R.D. at 545 ("if bank subsidiary or any other wholly-owned subsidiary bank of [bank holding company] has possession and custody of documents responsive to Plaintiffs' requests, then [bank holding company] has legal control of the documents through its control of the subsidiary bank and must produce.").

This District has followed the reasoning of the Second and Eleventh Circuits. *Liverpool*, 2021 WL 3793901, at *3 (all responsive documents were located in Japan and this Court ordered their production by a non-party bank). So, too, have a variety of other federal district courts. *See Matter of Degens,* 2020 WL 4252725, at *5 (S.D.N.Y. July 24*, 2020) (ordering production of information located anywhere in the world)*; Matter of De Leon*, 2020 WL 1180729, at *9-10 (S.D. Ohio Mar. 12, 2020) (ordering production of documents that a wholly owned foreign subsidiary of an Ohio entity held outside the U.S.), *appeal dismissed sub nom. In re De Leon*, No. 20-3406, 2020 WL 3969865 (6th Cir. May 26, 2020)*; Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020) ("the Court declines to limit production to documents physically located within the United States.").

Given the reality of twenty-first century business, it is reasonable to focus on functional control rather than geographic boundaries. As the past two years have starkly illustrated, online and computer access to people and information has become more important to modern business than a street address. Accordingly, this Court has the authority to order MS to produce documents maintained in Hong Kong by its wholly owned subsidiary, MS Asia, and should do so.

### E.       The Context of the Appraisal Proceeding Supports Approval of the Petition.

The four *Intel* factors are not exclusive. A district court can consider any other pertinent facts in deciding whether to grant the requested discovery. *In re del Valle Ruiz*, 939 F. 3d 520 at 533. Here, the significant connections between the facts underlying the Appraisal Proceeding and the U.S. provide an additional reason to grant the Petition. This case differs from the usual posture of a Section 1782 petition in which a foreigner comes to the U.S. seeking evidence for use in a foreign litigation that has only an incidental connection to this country. *See In re Fuhr*, 2014 WL 11460502, at *2 (S.D.N.Y. Aug. 6, 2014) ("the defamation action arose out of conduct that took place in

17

Germany, that the parties are all located in Germany"). Here, by contrast, Petitioner is a Delaware limited partnership, and courts are more inclined to grant discovery under Section 1782 where the discovery is being sought to benefit an American. *De Leon v. Clorox Co.*, 2021 WL 718840, at \*4 (N.D. Cal. Feb. 24, 2021) (granting discovery requests by an American citizen who is a party to an inheritance dispute in Saudi Arabia).

In addition, Sina for more than twenty years took advantage of the U.S. capital markets to obtain financing. Petitioner became a shareholder of Sina by purchasing stocks that were traded on a U.S. exchange. Respondent MS is a well-known U.S. bank. Its wholly owned subsidiary, MS Asia, represented the Special Committee and provided the materially inaccurate valuation analyses that assisted Mr. Chao in taking the Company private for woefully inadequate consideration. Notably, Sina filed both the MS Presentation and Fairness Opinion with the Securities and Exchange Commission and, in so doing, communicated them to the investing public in the United States. As such, it is neither burdensome nor unfair for a U.S. court to order MS to produce discovery relating to the MS Presentation and Fairness Opinion to Petitioner.

## CONCLUSION

MS and MSC are key repositories of evidence that is directly relevant to the central issues in the Appraisal Proceeding. It is fair and reasonable to deploy Section 1782 to compel Respondents to produce evidence necessary to resolve the Appraisal Proceeding. While the Cayman Court will welcome the introduction of this highly relevant evidence, it lacks the jurisdiction necessary to order the discovery itself. But this Court has the jurisdiction and the authority to order Respondents to provide the discovery that Petitioner is requesting.

For all of the foregoing reasons, the Court should grant this Petition and authorize Petitioner to serve subpoenas pursuant to 28 U.S.C. § 1782 on Morgan Stanley and Morgan Stanley

& Co. LLC in the form set forth as Exhibits A and B to the Wang Decl. for production of documents and Rule 30(b)(6) depositions and grant such other and further relief as the Court deems just and proper.

Dated: January 20, 2022           **REID COLLINS & TSAI LLP**

/s/Jonathan M. Kass
Jonathan M. Kass (DE ID 6003)
300 Delaware Avenue, Suite 770
Wilmington, DE 19801-6600
(302) 467-1765
jkass@reidcollins.com

REID COLLINS & TSAI LLP
William T. Reid, IV (*pro hac vice* to be submitted)
1301 S. Capital of Texas Hwy
Suite C300
Austin, Texas 78746
(512) 647-6100
wreid@reidcollins.com

REID COLLINS & TSAI LLP
Rachel S. Fleishman (*pro hac vice* to be submitted)
Minyao Wang (*pro hac vice* to be submitted)
330 West 58th Street
Suite 403
New York, NY  10019
(212) 344-5200
rfleishman@reidcollins.com
mwang@reidcollins.com